[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16101
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00168-SCJ-CCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEANGELO TAVARES LANGFORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 21, 2013)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Deangelo Tavares Langford appeals his 77-month sentence, imposed after

he pled guilty to being a felon in possession of a firearm.  On appeal, he argues

that: (1) the district court erred in calculating his base offense level under U.S.S.G. § 2K2.1(a)(3)(A); and (2) his sentence is procedurally and substantively unreasonable.  For the reasons set forth below, we affirm Langford's sentence.

I.

A federal grand jury indicted Langford for being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1).  Specifically, the indictment alleged that on or about September 21, 2010, Langford possessed: (1) a HiPoint 9mm pistol ("9mm pistol"); (2) a PAC West Arms .223 caliber rifle ("AR-15 firearm"); and (3) ammunition for both firearms.

Langford filed a motion to suppress evidence and, at the suppression hearing, Keith Backmon, an officer with the Atlanta Police Department ("APD"), testified that he responded to a report of shots fired at a residence on September 21, 2010.  Ultimately, APD officers searched the attic of the home and recovered an AR-15 firearm and a "small handgun."  After officers emerged from the attic, Officer Backmon heard Langford admit that "the guns were his."  Additionally, Marvice Smith, another APD officer who responded to the incident, testified that Langford said, "The guns are mine, man.  I wasn't trying to go back to jail."

After the hearing, the district court denied Langford's motion to suppress evidence, and he entered a non-negotiated guilty plea to the charged offense. During the plea colloquy, Langford admitted that he possessed the 9mm pistol and

2

the three rounds of ammunition that were inside the pistol. However, Langford did not admit to possessing the AR-15 firearm or its ammunition. Ultimately, the court accepted Langford's guilty plea.

The presentence investigation report's ("PSI") description of the September 2010 incident was consistent with the suppression hearing testimony. The PSI indicated that, after APD officers arrived at the residence, officers discovered five children inside the house, and Langford told police that a black male fired several "rounds" at him and then left. A search of the house's attic revealed a 9mm pistol and an AR-15 rifle with a high capacity magazine attached, and further investigation revealed that both firearms were stolen. Langford told police that the guns belonged to him, and that he was a felon.

The PSI assigned Langford a base offense level of 22, pursuant to U.S.S.G. § 2K2.1(a)(3)(A) because the AR-15 firearm had a high capacity magazine attached, which was capable of holding 20 rounds. Langford received a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the firearms were stolen. He also received a 3-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), (b), resulting in a total base offense level of 21.

As to Langford's criminal history, he had 12 prior convictions between 1993 and 2010 for various offenses, including possession of cocaine with intent to

3

distribute, theft by shoplifting, theft by receiving stolen property, obstruction of justice, possession of marijuana, and possession of cocaine. In April 2011, Langford pled guilty in state court to being a felon in possession of a firearm as a result of the same September 2010 incident giving rise to the instant charges. Langford's prior convictions resulted in 14 criminal history points and a criminal history category of VI. The PSI also indicated that Langford had been arrested for several other offenses that did not result in a conviction. Based on a total offense level of 21 and a criminal history category of VI, Langford's guideline range was 77 to 96 months. The statutory maximum penalty was ten years' imprisonment.

Prior to sentencing, Langford objected that his base offense level was calculated under § 2K2.1(a)(3)(A) based on his possession of the AR-15 firearm. He asserted that he did not plead guilty to possessing the AR-15 firearm, he did not handle the firearm, and it did not belong to him. Thus, he argued, his base offense level should be 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).

At sentencing, the district court adopted the facts as stated in the PSI and noted that no objections had been filed with respect to the PSI's factual findings. After hearing arguments from the parties, the court overruled Langford's objection to the calculation of his base offense level, finding that, based on a preponderance of the evidence, Langford possessed the AR-15 firearm, and such possession was

4

relevant conduct for sentencing purposes. Thus, the court adopted the PSI's guideline calculations and applied a guideline range of 77 to 96 months.

Langford then addressed his criminal history, noting that he had received 14 criminal history points, which was "extremely high." Among other things, he noted that several of his convictions occurred at a young age and some of his offenses were less serious than others. Langford argued that, although his criminal history warranted "concern" and "continued supervision," it was not as serious as other cases in which the defendant had harmed other people. As to his history and characteristics, Langford argued that, although he made "a really bad decision," he had already "paid a price" through his state sentence. He further argued that, based on his background, the nature of his prior convictions, and the circumstances of this case, time served would be a reasonable sentence.

Next, Langford's mother testified regarding his personal history and family background. Langford then made a statement, expressing remorse for his actions, accepting personal responsibility, and requesting leniency for himself and for the sake of his children. Through counsel, he later argued that the guideline range was based on an overrepresentation of his criminal history. If the court, however, found that a guideline sentence was appropriate, then it should subtract 9 months from the low end of the guideline range and impose a 68-month sentence. He

further argued that he was not a "violent, gun-toting" individual, as his criminal history did not include any gun charges, aside from the instant offense.

The court then explained its reasoning for Langford's sentence, indicating that it had considered the statements of Langford, his mother, and his counsel. The court also considered that Langford had "a very bad record," including 22 arrests and 12 convictions, 4 of which were for drug offenses. Although Langford's actions did not harm other people, he had shown disrespect for the law. Moreover, young people make mistakes, but Langford continued to violate the law into his thirties. He also possessed a weapon under circumstances in which someone could have been seriously hurt. The court had considered imposing a sentence of between 85 and 90 months. However, in light of the 9 months that Langford had already served for his state conviction, the court believed a 77-month sentence was reasonable. In imposing Langford's sentence, the court had considered the 18 U.S.C. § 3553(a) factors and imposed a sentence within the Guidelines. Although the court had considered imposing a sentence outside the Guidelines, promoting respect for the law should apply even to nonviolent crimes, and Langford had not shown any such respect. Thus, the court imposed a 77-month sentence.

In response, Langford objected to the reasonableness of his sentence under § 3553(a). The court noted that determining Langford's sentence had been difficult. Moreover, the court had considered the age of Langford's children and

6

that he would be missing years of their lives. The court, however, could not disregard his 12 prior convictions.

## II.

We review the district court's factual findings for clear error and its application of the Guidelines to those facts *de novo*. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). We have stated that there is no clear error in cases where the record supports the district court's findings. *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002). Further, we must be left with a definite and firm conviction that the district court has committed a mistake in order for its finding to be clearly erroneous. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). "The burden of establishing evidence of the facts necessary to support a sentencing enhancement falls on the government, and it must do so by a preponderance of the evidence." *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007).

Section § 2K2.1 of the Guidelines provides the base offense level for crimes involving the unlawful possession of firearms. U.S.S.G. § 2K2.1. Under § 2K2.1(a)(3)(A), a base offense level of 22 applies where the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant has at least one prior felony conviction for a controlled substance offense. U.S.S.G. § 2K2.1(a)(3)(A), (B). Under the same circumstances, if the

7

firearm is not capable of accepting a high capacity magazine, a base offense level of 20 applies.  U.S.S.G. § 2K2.1(a)(4)(A).  A high capacity magazine is one that is capable of holding more than 15 rounds of ammunition.  U.S.S.G. § 2K2.1 comment. (n. 2).

Under the Guidelines, where a guideline provides for more than one base offense level, the offense level is determined based on a defendant's relevant conduct.  *See* U.S.S.G. § 1B1.3(a); *see also* U.S.S.G. § 1B1.1 comment. (n.1(H)) (defining "offense" as the offense of conviction and all relevant conduct under § 1B1.3).  Relevant conduct includes all acts and omissions committed by the defendant that occurred during the offense, in preparation for the offense, or in the course of attempting to avoid detection or responsibility for that offense.  U.S.S.G. § 1B1.3(a)(1)(A) and (B).  Moreover, a sentencing judge may consider relevant acquitted conduct that has been proven by a preponderance of the evidence. *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006).

The district court did not clearly err in applying a base offense level of 22 under § 2K2.1(a)(3)(A) based on a finding that Langford's relevant conduct included possession of the AR-15 firearm.  Langford correctly notes that he pled guilty only to possession of the 9mm pistol, and he denied possessing the AR-15 firearm, which was the firearm that qualified him for a base offense level of 22. Nonetheless, in determining Langford's base offense level, the district court was

8

permitted to consider all of his relevant conduct, as long as it was proved by a preponderance of the evidence. *See Faust*, 456 F.3d at 1347. Here, even though Langford did not plead guilty to possession of the AR-15 firearm, the government proved his possession of the firearm by a preponderance of the evidence. During the suppression hearing, two APD officers testified that, when they discovered the 9mm pistol and the AR-15 firearm, Langford admitted that the "guns," plural, belonged to him. Moreover, Langford admitted helping another individual put the 9mm pistol in the attic, and one of the children at the residence stated that his mother's boyfriend "put the guns in the attic." Additionally, Langford admitted to possession of the 9mm pistol, which was found in the same attic as the AR-15 firearm. This evidence supported the district court's factual finding that Langford possessed the AR-15 firearm. *See Petrie*, 302 F.3d at 1290. Thus, the district court did not clearly err in assigning Langford a base offense level of 22 under § 2K2.1(a)(3)(A) because he possessed a firearm that was capable of accepting a high capacity magazine.

## III.

We review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). A district court's sentence need not be the most appropriate one, but rather need only be a reasonable one. *United States v. Irey*,

9

612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*).  We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable.  *Id.*  Moreover, we do not substitute our own judgment for that of the district court in weighing the relevant sentencing factors, absent a clear error of judgment.  *See United States v. Early*, 686 F.3d 1219, 1223 (11th Cir. 2012).

We utilize a two-step process in its review for reasonableness.  *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010).  We first examine whether the district court committed any significant procedural error and, second, whether the sentence is substantively reasonable under the totality of the circumstances.  *Id.* The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in § 3553(a).  *Id.*  A district court commits procedural error by (1) failing to calculate or improperly calculating the applicable guideline range; (2) treating the Guidelines as mandatory; (3) failing to consider the § 3553(a) factors; (4) basing a sentence on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

We review a sentence's substantive reasonableness by examining the totality of the circumstances, which includes an inquiry into whether the § 3553(a) factors support the sentence in question.  *United States v. Gonzales*, 550 F.3d 1319, 1323-

24 (11th Cir. 2008). The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7). Ordinarily, we expect a sentence within the guideline range to be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, a sentence imposed well below the statutory maximum is one indicator of a reasonable sentence. *See Gonzales*, 550 F.3d at 1324.

Langford has not met his burden of showing that his sentence is procedurally or substantively unreasonable. *See Turner*, 626 F.3d at 573. As to procedural reasonableness, Langford's only argument on appeal is that the district court improperly calculated his base level as 22, instead of 20, because it erroneous found that he possessed the AR-15 firearm. As discussed above, the district court did not clearly err in finding that Langford possessed the AR-15 firearm or in

calculating his base offense level.  Although Langford challenges the district court's reliance on officer testimony that he admitted to possession of both firearms, a review of the evidence supports the district court's findings.  Thus, Langford's sentence is procedurally reasonable because the district court did not err in calculating his base offense level or guideline range.  *See Gall*, 552 U.S. at 51, 128 S.Ct. at 597.

Finally, Langford has not shown that his sentence is substantively unreasonable in light of the record and the § 3553(a) factors.  *See Turner*, 626 F.3d at 573.  Langford's 77-month sentence was imposed at the low end of the guideline range, and this Court ordinarily expects such a sentence to be reasonable.  *See Talley*, 431 F.3d at 788.  Moreover, Langford's 77-month sentence was imposed well below the 10-year (120-month) statutory maximum for his offenses, further indicating that it was a reasonable sentence.  *See Gonzales*, 550 F.3d at 1324.  Additionally, Langford had 12 prior convictions, as well as numerous other arrests, which suggests that a sentence within the applicable guideline range was necessary to deter him from future criminal conduct and to promote respect for the law.  *See* 18 U.S.C. § 3553(a).  Notably, the district court considered imposing a sentence below the guideline range, but, ultimately, it determined that a Guidelines sentence was necessary because Langford had shown a lack of respect for the law.

Additionally, as to the nature and circumstances of the offense, the district court noted that Langford possessed a firearm under circumstances in which someone could have been seriously hurt.  Indeed, Langford possessed the firearm in potentially dangerous circumstances, as several children were present at the scene and Langford reported that another individual had fired several "rounds" before officers arrived.  *See* 18 U.S.C. § 3553(a).  On appeal, Langford suggests that his sentence is substantively unreasonable because he has already served a sentence in state court for firearm possession charges.  However, the district court considered Langford's state conviction and credited him for the nine months that he served for that conviction.  In sum, Langford's sentence is substantively reasonable because it was imposed at the low end of the applicable guideline range, it is well below the maximum sentence, and it serves the sentencing goals set forth in § 3553(a).

For the foregoing reasons, we affirm Langford's sentence.

**AFFIRMED.**

13